**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARTHA DEL SOCORRO CONDE BRAVO,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-2096-D** |
| **FRED FIGUEROA, et al.,** | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Martha del Socorro Conde Bravo, a citizen of Colombia proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging her detention by U.S. Immigration and Customs Enforcement ("ICE"). (Doc. 1).[1] United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 3). Respondents filed a Response, (Doc. 8), and Petitioner filed a Reply, (Doc. 10). The matter is at issue. For the reasons set forth below, the undersigned recommends that the Court **GRANT** the Petition and order Petitioner's **immediate release** subject to the conditions of her prior Order of Supervision.

[1] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

## I. Factual Background

The relevant facts in this matter are as follows:

- Petitioner is a citizen of Colombia. (Doc. 8, at Ex. 1, at 1). On July 2, 2021, she was issued an expedited removal order and returned to Colombia the same day. (*Id.* at 3).

- Petitioner illegally re-entered the United States on September 28, 2022. (*Id.* at Ex. 2, at 1). The U.S. Department of Homeland Security ("DHS") reinstated her prior order of removal on October 4, 2022. (*Id.* at Ex. 2, at 1-2).[2] Petitioner expressed a fear of return and received a positive fear determination, but her case was not then referred to an immigration judge ("IJ"). (*Id.* at Ex. 1, at 3).

- On November 7, 2022, ICE released Petitioner on an Order of Supervision ("OOS"), which states that "[b]ecause the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision." (Doc. 1, at Ex. 2, at 1). Among its conditions, the OOS required Petitioner to provide ICE with copies of any requests she made to embassies or consulates for a travel document. (*Id.* at Ex. 2, at 2).

- Petitioner asserts that complied with her OOS for more than three and a half years. (Doc. 1, at 10). Respondents do not claim otherwise.

- On June 17, 2026, ICE took Petitioner into custody at a routine check-in. (Doc. 8, at Ex. 1, at 3). The Form I-213 states only that, "[u]pon reviewing checks, ERO issued a custody redetermination, and the SUBJECT was then taken into custody." (Doc. 8, at Ex. 1, at 3). ICE served Petitioner with a Form I-200 arrest warrant and referred her case to an IJ for withholding-only proceedings. (*Id.* at Ex. 1, at 4; *id.* at Ex. 4). The record does not contain a notice of revocation and or an indication that Petitioner received an informal interview.

- On July 29, 2026, an IJ denied Petitioner's request for a custody redetermination for lack of jurisdiction because she is in withholding-only proceedings. (*Id.* at Ex. 5).

---

[2] The Order of Supervision indicates that Petitioner has been subject to a final order of removal since July 2, 2021 (*i.e.,* the date Petitioner was ordered removed pursuant to an expedited order of removal). (Doc. 1, at Ex. 2, at 1).

- On October 26, 2026, the IJ denied Petitioner's application for withholding of removal. Petitioner appealed that decision to the Board of Immigration Appeals ("BIA") on November 9, 2026, and it is pending.[3]

- ICE's case summary for Petitioner, which Respondents filed with the Court on September 25, 2026, indicates that ICE is not proceeding with removal at this time. (Doc. 12, at Ex. 1) ("Proceed with Removal: No").

- Petitioner is detained at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 12 at 1).

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises two grounds for relief:

1. ICE revoked her OOS without notice of the reasons for revocation, an informal interview, or a showing of changed circumstances, in violation of its regulations and the *Accardi* doctrine. (Doc. 1, at 6, 10-12).

2. The same failures violated her Fifth Amendment right to due process. (*Id.* at 12).

As relief, Petitioner requests immediate release under conditions no more restrictive than those of her prior OOS, an order barring her transfer outside this District, declaratory relief, and fees. (*Id.* at 13).[4] In Reply, Petitioner also argues that her detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 10, at 3-5).

Respondents argue that (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(5); (2) an *Accardi* claim is not cognizable in habeas; (3) 8 C.F.R. § 241.13 does not apply because Petitioner has not shown that her removal is unlikely; (4) ICE could

---

[3] *See* EOIR Automated Case Information System, acis.eoir.justice.gov/en/caseInformation (last accessed Nov. 20, 2026).

[4] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, she must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

revoke her release without notice or an interview under 8 C.F.R. § 241.4(l)(2); and (5) Petitioner received all the process she was due and has not shown prejudice. (Doc. 8, at 4-13).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## IV. Legal Framework for the Detention and Release of Non-Citizens Subject to a Final Order of Removal

When a non-citizen is ordered removed, 8 U.S.C. § 1231(a) provides a 90-day "removal period" for the government to accomplish removal, during which detention is mandatory. 8 U.S.C. § 1231(a)(1)(A), (a)(2). The removal period begins on the latest of (1) the date the order of removal becomes administratively final; (2) the date of a reviewing court's final order if the court stays removal; or (3) the date the non-citizen is released from non-immigration detention or confinement. *Id.* § 1231(a)(1)(B). If the non-citizen is not removed within the removal period, she ordinarily "shall be [released] subject to supervision." *Id.* § 1231(a)(3). The government may, however, continue to detain certain non-citizens beyond the removal period. *Id.* § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682; *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-79 (2022). But § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a

period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

After *Zadvydas*, ICE adopted 8 C.F.R. § 241.13, which establishes "special review procedures" that apply when there is no significant likelihood of the non-citizen's removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(a); *see Abedi v. Carter*, -- F.4th--, 2026 WL 3149141, at *14-15 (10th Cir. Oct. 21, 2026) (distinguishing § 241.13 from the general custody review procedures of 8 C.F.R. § 241.4). When ICE makes that determination, it must release the non-citizen under an order of supervision. 8 C.F.R. § 241.13(g)-(h). A release granted under § 241.13 "could be revoked only under the process established in § 241.13(i)." *Abedi*, 2026 WL 3149141, at *17.

## V. Petitioner Is Detained Under § 1231(a)(6).

Respondents contend that Petitioner is subject to mandatory detention under § 1231(a)(5). (Doc. 8, at 4). But § 1231(a)(5) is not a detention provision. It provides that when a non-citizen illegally re-enters the United States after removal, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed," and the non-citizen "shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). A non-citizen subject to a reinstated order is detained, if at all, under the general provisions of § 1231(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018) (explaining that § 1231(a) governs detention once a non-citizen is subject to a final removal order); *M.S.C.R. v. Lyons*, 2026 WL 607998 (E.D. Cal. Mar. 4, 2026) (holding that a non-citizen with a reinstated order and pending withholding-only proceedings was detained under § 1231(a)(6)).

Reinstatement is determined by an immigration officer, without a hearing before an IJ. 8 C.F.R. § 241.8(a). A reinstated order is therefore final upon issuance. *See Riley v. Bondi*, 606 U.S. 259, 267 (2025) (explaining that an order that cannot be reviewed by an IJ or the BIA "becomes final immediately upon issuance") (citation modified). Withholding-only proceedings do not change that. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021) (holding that the "initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal").

Accordingly, Petitioner's re-detention is governed by § 1231(a)(6).

## VI. ICE Did Not Follow Its Regulations When It Revoked Petitioner's Release.

In administrative law, it is a bedrock principle that an agency must adhere to its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Nor may an agency evade that duty through inaction, for "an agency's obligation to comply with its own regulations cannot be discharged by silence." *Wonsehleay v. Mullin*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (W.D. Okla. Aug. 26, 2026), *adopted*, 2026 WL 2662005 (W.D. Okla. Sept. 9, 2026). The Due Process Clause is likewise implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

### A. Petitioner Was Released Under § 241.13.

With regard to the regulations that govern her release on an OOS and her re-detention, Petitioner invokes both § 241.4 and § 241.13, (Doc. 1, at 6, 11-12; Doc. 10, at 1-3), and Respondents contend that § 241.13 does not apply because Petitioner has not

provided good reason to believe that her removal is unlikely. (Doc. 8, at 8-10). The record nonetheless makes plain that § 241.13 governed Petitioner's release. Her OOS states that she was released "[b]ecause the agency has not effected your deportation or removal during the period prescribed by law." (*Id.* at Ex. 3). Like the release in *Abedi*, which was based on officials having "been unable to remove [the non-citizen] from the United States," Petitioner's release was predicated on the unlikelihood of her removal rather than on findings under the general post-removal-period release provision of § 241.4. *See Abedi*, 2026 WL 3149141, at *17; *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *3 (W.D. Okla. Mar. 20, 2026) ("[T]his exact language signals the individual was released because the government made a determination that there was no significant likelihood of removal in the reasonably foreseeable future."). When ICE released Petitioner, her OOS required her to seek her own travel document. These release conditions also indicate that Respondent was released under § 241.13. *See Zaidi v. Blanche*, No. CIV-26-1487-HE, 2026 WL 3270033, at *4 (W.D. Okla. Oct. 19, 2026) (concluding that § 241.13 governed the petitioner's release where ICE released him after it was unable to obtain travel documents for his removal), *adopted*, 2026 WL 3274520 (W.D. Okla. Oct. 30, 2026).

Respondents' contrary argument is foreclosed by *Abedi*, which rejected the view that § 241.13(i) applies only after the non-citizen affirmatively shows that removal remains unlikely upon re-detention after previous release on an OOS, because that reading would render § 241.13(i) superfluous. *Abedi*, 2026 WL 3149141, at *17. Petitioner's release therefore "could be revoked only under the process established in § 241.13(i)." *Id.*

### B. Respondents Have Not Identified Changed Circumstances Under § 241.13(i)(2).

Section 241.13(i)(2) permits ICE to revoke a release granted under § 241.13 only if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). This provision supplies the mechanism through which ICE may revisit its earlier determination that the non-citizen is unlikely to be removed. *Abedi*, 2026 WL 3149141, at *17. Respondents, who bear the burden on this point, have identified neither such a determination nor any changed circumstance. *See Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) (holding that the government bears the burden "to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)"); *Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (explaining that § 241.13(i)(2) "contemplates an individualized determination made by the agency as the predicate for revocation, not a rationale assembled in litigation"); *see also Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding that ICE bore the burden to show that a significant likelihood of removal existed at the time of re-detention).

The only contemporaneous explanation for Petitioner's re-detention is the I-213's statement that ICE took her into custody "[u]pon reviewing checks," and ICE's own case summary lists "Proceed With Removal: No." (Doc. 8, at Ex. 1, at 3; Doc. 12, at Ex. 1). In determining whether removal has become significantly likely, ICE must consider, among other things, the non-citizen's history of compliance, the government's prior efforts to

remove her, and the views of the Department of State regarding the prospects for removal. *See* 8 C.F.R. § 241.13(f); *Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5. Nothing in the record reflects that ICE weighed any of these considerations before re-detaining Petitioner.

Respondents emphasize that Petitioner's reinstated order has been final since 2022 and that withholding-only proceedings do not prevent DHS from removing her to a third country. (Doc. 8, at 5). But both facts were equally true when ICE released Petitioner in November 2022, and a circumstance that existed at the time of release cannot be the "changed circumstance[]" that justifies revoking it. 8 C.F.R. § 241.13(i)(2). Furthermore, there is no evidence that Respondents initiated Petitioner's removal to a third country before her re-detention (or afterwards for that matter). "A determination that must exist at the time of revocation cannot be supplied by efforts undertaken weeks or months after the fact." *Majmaie v. Mullin*, No. CIV-26-1035-D, 2026 WL 1999252, at *4 (W.D. Okla. July 10, 2026), *adopted*, 2026 WL 2255074 (W.D. Okla. Aug. 5, 2026); *see Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (finding no changed-circumstances determination where ICE did not request a travel document until thirty days after re-detention); *Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *5 (finding no changed circumstances where the government did "not explain what has changed as to Petitioner").

Respondents likewise do not contend that Petitioner violated a condition of her release, which would be a separate basis for revocation under § 241.13(i)(1). Thus, Respondents failed to follow their own regulations requiring justification to revoke an OOS. *See Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2662005, at *1 (adopting report

and recommendation and granting habeas relief where respondents did not show that the petitioner violated a condition of his release under § 241.13(i)(1) or changed circumstances as required by § 241.13(i)(2)).

**C. Respondents Did Not Provide Notice or a Prompt Informal Interview Under § 241.13(i)(3).**

Independent of these substantive prerequisites, § 241.13(i)(3) mandates that, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and that ICE "conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). These requirements apply to any revocation under § 241.13(i), whether it is based on a violation of release conditions or on changed circumstances. *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026) (explaining that revocation "for either reason triggers a notification requirement and a review process").

Respondents failed to provide Petitioner notice of the reasons for revocation. The record contains no notice of revocation. Respondents instead contend that Petitioner learned of the revocation when she was served with the Form I-200 arrest warrant. (Doc. 8, at 11). But that warrant states only that there is probable cause to believe Petitioner is removable, and it does not mention her OOS or any reason for revoking it. (*Id.* at Ex. 4). It therefore does not satisfy § 241.13(i)(3). *See Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *4 (holding that a document that "does not identify the reasons for revocation" does not satisfy § 241.13(i)(3)); *Bui*, No. CIV-26-91-J, 2026 WL 788947, at *3 (explaining

that § 241.13(i)(3) "requires not just notice, but notice that specifies 'the reason for revocation of his or her release'"); *Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (explaining that the reasons for revocation "cannot be conclusory" and that "ICE must identify the specific facts supporting its decision"); *Alizadeh v. Mullin*, No. CIV-26-1316-HE, 2026 WL 2280713, at *3 (W.D. Okla. Aug. 7, 2026) (finding inadequate notice where the officer's declaration did "not state Petitioner received notice or an interview when taken into custody"), *adopted*, 2026 WL 2388908 (W.D. Okla. Aug. 17, 2026).

Respondents likewise failed to afford Petitioner a prompt informal interview. The regulation does not define "promptly," but the Tenth Circuit has given the term its ordinary meaning of "without delay" or "very quickly or immediately." *Abedi*, 2026 WL 3149141, at *19 (quotation omitted). In so holding, the court drew guidance from the Supreme Court's forty-eight-hour standard for prompt probable cause determinations, and it faulted the government for failing to explain why it could not have interviewed the non-citizen "within the four weeks that elapsed before he filed his habeas petition." *Id.* at *19-21 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991)). The IJ's July 29, 2026, custody decision, which held only that the IJ lacked jurisdiction, is not the "initial informal interview" that § 241.13(i)(3) requires. *See Majmaie*, No. CIV-26-1035-D, 2026 WL 1999252, at *5 ("A custody review conducted months later, directed at the separate question of continued detention, is not that interview.").

Critically, Respondents do not contend that Petitioner ever received an informal interview, and five months have now elapsed since her return to custody. In *Abedi*, a comparable delay "easily establishe[d]" that the government did not promptly conduct the

interview. *Abedi*, 2026 WL 3149141, at *18, *21; *see also Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2662005, at *1 (granting habeas relief where respondents did not follow the notice and informal interview requirements of § 241.13(i)(3)). Respondents instead assert that they "were not required to provide her with notice and opportunity to present evidence as they were authorized to revoke her release under 8 C.F.R § 241.4(I)(2), once they determined, in their discretion, that revocation was appropriate to enforce her removal order." (Doc. 8, at 10-11).[5] Thus, the undersigned finds that Respondents have also violated § 241.13(i)(3).

**D. Respondents' Regulatory Violations Entitle Petitioner to Habeas Relief.**

Respondents argue that an *Accardi* claim is not cognizable in habeas, that this proceeding provides all the process Petitioner is due, and that she has not shown prejudice. (Doc. 8, at 6-8, 11-13). *Abedi* forecloses each argument. In *Abedi*, the Tenth Circuit set forth the test for determining whether the government's failure to follow its own regulations entitles a non-citizen to relief. "When an agency fails to comply with regulations that establish procedural protections for individuals, this failure may constitute

[5] That this provision does not exist. The undersigned assumes Respondents intended to cite to 8 C.F.R. § 241.4(l)(2). Even if § 241.4 were applicable the result would be the same. Respondents contend that § 241.4(l)(2) permits revocation without notice or an interview. (Doc. 8, at 10-11). Judges in this District have rejected that reading. *See Khaddaj v. Grant*, No. CIV-26-273-SLP, Doc. 11, at 12-13 (W.D. Okla. Apr. 6, 2026) (concluding that the argument that § 241.4(l)(2) does not require notice and an opportunity to respond "is an incorrect interpretation of that regulation"), *adopted* (W.D. Okla. May 21, 2026). And the custody review that § 241.4(l)(3) provides for any non-citizen whose release "has been or is subject to being revoked" follows "the informal interview provided for in paragraph (l)(1)." 8 C.F.R. § 241.4(l)(3).

*per se* prejudice, negating the need for the plaintiff to make any additional showing of prejudice to be entitled to relief." *Abedi*, 2026 WL 3149141, at *22 (citing *Accardi*, 347 U.S. at 266-68). Not every regulation is of that nature. *Id.* at *23. But "when an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation," and "[f]ailure to comply will merit invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced the complaining party." *Id.* (quoting *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010)); *see also Caceres*, 440 U.S. at 749 ("A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law.").

Applying that test, the Tenth Circuit held that § 241.13(i) is such a regulation. The government's failure to follow its procedures "involve[d] more than mere . . . procedural irregularities" and was instead a failure to comply with "a regulation protecting fundamental statutory or constitutional rights of parties appearing before it." *Abedi*, 2026 WL 3149141, at *24 (first quoting *Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959); and then quoting *Leslie*, 611 F.3d at 180). The violation therefore "merit[ed] invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced [the non-citizen]." *Id.* (quoting *Leslie*, 611 F.3d at 180). The court further held that, even if the violation were not *per se* prejudicial, the non-citizen was prejudiced in fact "because he was held for months in detention without the ability to contest the basis for his detention or to otherwise be heard," and "[t]he lack of process was itself an injury." *Id.* Nor did the availability of habeas review cure the violation, because the possibility of

habeas review "cannot conceivably cure the harm caused by the agency's failure to 'promptly' provide the noncitizen with the immediate administrative due process required by this regulation." *Id.* Holding otherwise "would convert protective regulations into aspirational suggestions and would incentivize noncompliance by shifting the burden and cost of the process to federal courts and incarcerated petitioners." *Id.* at *25 (quotation omitted).

Measured against that standard, Petitioner is entitled to relief. As in *Abedi*, ICE revoked a release granted under § 241.13 without complying with § 241.13(i). ICE did not identify any changed circumstances or give Petitioner notice of the reasons for revoking her release or an opportunity to respond to them. The violation is therefore prejudicial *per se*, and Petitioner need not make any additional showing. *See Abedi*, 2026 WL 3149141, at *24; *Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1397059 (W.D. Okla. May 19, 2026), *adopted*, 2026 WL 1495209, at *2 (W.D. Okla. May 28, 2026) ("[T]he harmless error doctrine does not apply here," because "regulatory violations under § 241.13 implicate due process concerns even without a prejudice inquiry.") (quoting *Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4-6 (W.D. Okla. Feb. 20, 2026)). Even setting aside *per se* prejudice, Petitioner has suffered actual prejudice. She has now been detained for five months, and she was "denied a meaningful opportunity, at a meaningful time, to contest the revocation of [her] release." *Bui*, No. CIV-26-91-J, 2026 WL 788947, at *3; *see Abedi*, 2026 WL 3149141, at *24. That Petitioner has since secured review in this Court does not alter the analysis. *See Abedi*, 2026 WL 3149141, at *24-25.

Because ICE revoked Petitioner's release without complying with § 241.13(i), the revocation is invalid, Petitioner is in custody in violation of the laws of the United States, and she is entitled to release. 28 U.S.C. § 2241(c)(3); *see Abedi*, 2026 WL 3149141, at *24 (citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release.")); *see also Bassam v. Grant*, No. CIV-26-657-D, 2026 WL 1832382, at *3 (W.D. Okla. June 26, 2026) ("ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and . . . his release is therefore appropriate under 28 U.S.C. § 2241(c)(3)."); *Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *10 (W.D. Okla. Jan. 26, 2026); *Tran*, No. CIV-25-1357-G, 2026 WL 1181700, at *3; *Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *6 (collecting cases).

**VII. Remedy**

Because ICE revoked Petitioner's release without complying with § 241.13(i), the revocation should be invalidated and Petitioner returned her previous order of supervision. *See Abedi*, 2026 WL 3149141, at *24; *Alizadeh*, No. CIV-26-1316-HE, 2026 WL 2388908, at *2 (ordering release "within three (3) business days of the date of this order, subject to an appropriate order of supervision").

The undersigned also recommends enjoining Respondents from re-detaining Petitioner unless and until they comply with § 241.13(i), including by determining, on account of changed circumstances arising after the Court's order, that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, and by providing

notice of the reasons for revocation and a prompt informal interview. *See Majmaie*, No. CIV-26-1035-D, 2026 WL 2255074, at *3 n.2 (recognizing that "the actual receipt of a travel document" may constitute "the type of changed circumstance that would allow for compliance with § 241.13(i)(2)"). Such an order does not interfere with Respondents' authority to execute Petitioner's removal order. *See Abedi*, 2026 WL 3149141, at *13 (holding that § 1252 does not bar relief in "a habeas proceeding challenging the legality of the detention without contesting the underlying removal order").

Because the undersigned recommends granting habeas relief on these grounds, the undersigned need not reach Petitioner's *Zadvydas* argument, particularly as it would not afford Petitioner greater relief. *See Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *7; *Majmaie*, No. CIV-26-1035-D, 2026 WL 2255074, at *2 n.1. And Petitioner's request to bar her transfer outside this District is moot in light of the recommended release.

## VIII. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition, (Doc. 1), be **GRANTED**. The undersigned recommends the Court:

- order Respondents to release Petitioner from custody immediately subject to the conditions of her prior OOS,
- order Respondents to certify compliance by filing a status report within three business days of the Court's order; and
- enjoin Respondents from re-detaining Petitioner unless and until they comply with 8 C.F.R. § 241.13(i), including by determining, on account of changed circumstances arising *after* the Court's order, that there is a significant likelihood of her removal in the reasonably foreseeable future, and by providing notice of the reasons for revocation and a prompt informal interview.

The undersigned further recommends that Petitioner's request to bar her transfer outside this District be **DENIED as moot.**

**The Court advises the parties of their right to object to this Report and Recommendation by November 25, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[6] The Court advises the parties that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 20th day of November, 2026.

Amanda L. Maxfield

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

[6] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").